UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MERCHANTS MUTUAL INSURANCE
COMPANY,

                            Plaintiff,

                                                                        **ORDER**
       -against-                                                  21-CV-5381 (ARL)

NORGUARD INSURANCE COMPANY,

                            Defendant.
------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Plaintiff, Merchants Mutual Insurance Company ("Merchants" or "Plaintiff"), commenced this action against NorGUARD Insurance Company ("NorGUARD" or "Defendant"), seeking a declaration that NorGUARD must provide Merchants' insured Swan Lake Golf Corp. ("Swan Lake Golf") with a defense through separate and independent defense counsel. Before the Court are the parties cross motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons that follow, Plaintiff's motion for summary judgment is granted, and Defendant's motion for summary judgment is denied.

## BACKGROUND

### A. Procedural History

      Plaintiff filed the complaint in this action on September 28, 2021. ECF No. 1. Defendant answered the complaint on November 1, 2021. ECF No. 6. On October 14, 2022 the parties filed cross motions for summary judgment. ECF Nos. 22 & 23. Plaintiff served and filed a Rule 56.1 Statement in support of its motion for summary judgement. ECF No. 22-1. In opoosition to Plaintiff's motion for summary judgment and in support of its own motion for summary judgment, Defendants file a Rule 56.1 Statement, as well as a Response to Plaintiff's Rule 56.1

Statement.  ECF Noc. 23-1 & 23-2.  Plaintiff has not responded to Defendant's Rule 56.1 Statement.[1]

### B.     Factual Background

The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.

### 1.   The Insureds and Insurers

Swan Lake Golf owns a golf course located at 388 River Road, Manorville, New York. Pl. Rule 56.1 Stmt. ¶ 1.  On June 30, 2017, Swan Lake Golf entered into a lease agreement with Swan Lake Caterers LLC ("Swan Lake Caterers") that permitted Swan Lake Caterers to operate a bar and restaurant at the golf course.  *Id.* at ¶ 2, Def. Rule 56.1 Stmt. ¶ 3.

Merchants insures Swan Lake Golf under a commercial policy bearing Policy Number CMP9151722 for the policy period from May 1, 2018 to May 1, 2019 (the "Merchants Policy"). Pl. Rule 56.1 Stmt. ¶ 4.  The Merchants Policy provides Swan Lake Golf with liability coverage with limits of $1 million per occurrence and a $2 million general aggregate.  *Id.* at ¶ 5.

NorGUARD issued a policy to Swan Lake Caterers effective July 1, 2018 to July 1, 2019 (the "NorGUARD Policy").  Def. Rule 56.1 Stmt. ¶ 1.  The Lease between Swan Lake Golf and Swan Lake Caterers required Swan Lake Caterers to name Swan Lake Golf as an additional insured on its liability policy, and therefore, the NorGUARD Policy contains an additional insured ("AI") endorsement with a schedule listing Swan Lake Golf as an additional insured on

---

[1] Where as here, a party fails to respond to each numbered paragrapoh in a Rule 56.1 Statement, each paragraph in the moving party's 56.1 statement "will be deemed to be admitted for purposes of the motion." Local Civ. R. 56.1(c); *see also Gadsden v. Jones Lang Lasalle Americas, Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002). "However, where the party opposing the motion fails to respond to a numbered paragraph, there must be support for that paragraph in the evidentiary record for it to be deemed undisputed, since assertions of fact 'cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement.'"  *Funnekotter v. Agric. Dev. Bank of Zim.*, 2015 U.S. Dist. LEXIS 170848, at * 12, 2015 WL 9302560 (S.D.N.Y. Dec. 17, 2015) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001)).

the policy. *Id.* at ¶¶ 2, 4. The NorGUARD Policy provides liability coverage for bodily injury with limits of $1 million per occurrence and a $2 million general aggregate. Pl. Rule 56.1 Stmt. ¶ 7. Swan Lake Golf is entitled to coverage under the NorGUARD Policy with respect to the Underlying Actions on a primary basis. *Id.* at ¶ 30. The coverage for Swan Lake Golf under the Merchants Policy with respect to the Underlying Actions is excess to the coverage available to Swan Lake Golf under the NorGUARD Policy. *Id.* at ¶ 31.

### 2. Underlying Litigations

On September 30, 2018, an accident occurred when a vehicle Thomas Murphy was operating while intoxicated struck a group of pedestrians walking on the shoulder of the road (the "Underlying Incident"). *Id.* at ¶ 10. Between March and October of 2019, three personal injury lawsuits were commenced in New York Supreme Court of Suffolk County arising out of the Underlying Incident (together the "Underlying Actions). *Id.* at ¶ 11. Swan Lake Golf and Swan Lake Caterers were named separately in each of the Underlying Actions. *Id.* The Underlying Actions have been joined for discovery and trial. *Id.* at ¶ 12. Plaintiffs in the Underlying Actions allege that Swan Lake Golf and Swan Lake Caterers were negligent in serving alcohol to Murphy at the golf course prior to the Underlying Incident. *Id.* at ¶ 13.

Merchants assigned the law firm Stonberg Moran, LLP to defend Swan Lake Golf in the Underlying Actions. *Id.* at ¶ 14. In each of the Underlying Actions, Swan Lake Golf has asserted crossclaims against Swan Lake Caterers for contribution and/or common law indemnification for all or part of any verdict or judgment that the underlying plaintiffs may recover against Swan Lake Golf in the Underlying Actions. *Id.* at ¶ 15. NorGUARD has assigned the law firm Hannum Feretic Predergast & Merlino LLC to defend Swan Lake Caterers in the Underlying Action. *Id.* at ¶ 16. In each of the Underlying Actions, Swan Lake Caterers

has asserted crossclaims against Swan Lake Golf for contribution and/or common law/contractual indemnification for all or part of any verdict or judgment that the underlying plaintiffs may recover against Swan Lake Caterers in the Underlying Actions.  *Id.* at ¶ 17.

Initially,  NorGUARD took the position that the Merchants Policy and NorGUARD Policy provided co-primary coverage for Swan Lake Golf, and, that NorGUARD was not obligated to assume the defense on a primary and non-contributory basis.  Pl. Rule 56.1 Stmt. ¶ 21.  In April 2020, however, NorGUARD agreed that Swan Lake Golf qualified as an additional insured under the NorGUARD Policy, but the parties disputed priority of coverage.  Def. Rule 56.1 Stmt. ¶ 9.

Following the filing of this action in September 2021, NorGUARD, acknowledged its obligation to defend and indemnify Swan Lake Golf in the Underlying Actions as an additional insured under the NorGUARD Policy on a primary and non-contributory basis up to the $1 million liability limits of the policy.  *Id.* at ¶ 22; Def. Rule 56.1 Stmt. ¶ 12.  NorGUARD also agreed to reimburse Merchants for reasonable defenses costs incurred from the date of Merchants initial tender through December 16, 2021.  Pl. Rule 56.1 Stmt. ¶ 23. Merchants and NorGUARD subsequently agreed on the amount of defense fees to be reimbursed from the time of the initial tender through December 16, 2021.  *Id.* at ¶ 24.

In December 2021, NorGUARD advised Merchants that counsel currently defending Swan Lake Caterer would be substituting in to defend Swan Lake Golf in the Underlying Action going forward.  Def. Rule 56.1 Stmt. ¶ 14.  Merchants has advised NorGUARD that it cannot turn over the defense of Swan Lake Golf in the Underlying Actions to Hannum Feretic Predergast & Merlino LLC due to a conflict of interest. Pl. Rule 56.1 Stmt. ¶ 26.  Merchants has requested that NorGUARD provide separate counsel to defend Swan Lake Golf in the

4

Underlying Actions paid for by NorGUARD and allow Stonberg Moran to continue defending Swan Lake Golf. *Id.* at ¶ 27. NorGUARD has taken the position that Swan Lake Golf is not entitled to separate counsel from Swan Lake Caterers in the Underlying Actions. *Id.* at ¶ 28. Merchants' counsel forwarded NorGUARD's counsel its legal bills and the parties agreed that the amount to be reimbursed from the date of tender until December 16, 2021 was $26,649.82. Def. Rule 56.1 Stmt. ¶ 15. NorGUARD requested a copy of Merchants' W-9 to process the check in February 2022; it still has not been provided. *Id.* at ¶ 16.

## DISCUSSION

### I. Standard of Law

Both parties have moved for summary judgment. "'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *Gallo v. Prudential Residential Servs.,*

5

*L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

The above standard remains applicable where, as here, both parties have filed cross-motions for summary judgment. In such circumstances, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 627 (S.D.N.Y. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) and citing *S.E.C. v. Lyon*, 605 F. Supp. 2d 531, 540 (S.D.N.Y. 2009)).

### II.   Motions for Summary Judgment

#### A.   Plaintiff's Motion for Summary Jugdgment

Plaintiff argues that is entitled to summary judgment declaring that NorGUARD must provide a defense to Swan Lake Golf through separate counsel paid for by NorGUARD. Pl. Mem. at 3. According to Plaintiff, there is a conflict of interest between Swan Lake Golf and Swan Lake Caterers in the Underlying Actions, and therefore Swan Lake Golf is entitled to separate counsel paid for by NorGUARD. *Id*. at 3-4. In response, Defendant contends that there

6

is no conflict between Swan Lake Golf and Swan Lake Caterers because "NorGUARD has agreed to defend it with counsel of NorGUARD's choice and to indemnify Owner up to the NorGUARD Policy's $1 million limits." Def. Mem. at 8. According to Defendant "[t]he fact that, prior to NorGUARD's decision to defend and indemnify [Swan Lake Golf], [Swan Lake Golf] and Swan Lake [Caterer] asserted claims against each other is no longer relevant. NorGUARD's decision to have the same counsel defend each means that the cross- claims are discontinued and the parties, jointly defended, focus their energies on the Plaintiffs. That is how it always works when an insurer assumes the defense of an additional insured without a reservation of rights; the claims between the parties are discontinued and one counsel, typically the counsel originally hired by the insurer to defend the named insured, assumes the defense of the additional insured as well." *Id*. at 8-9.

As noted by Defendant, once NorGUARD acknowledged its obligation to defend and indemnify Swan Lake Golf in the Underlying Actions as an additional insured under the NorGUARD Policy, the anti-subrogation rule precludes any cross claims or claims for indemnification between Swan Lake Golf and Swan Lake Caterers up to the limits of the policy because "[a]n insurer . . . has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *N. Star Reins. Corp. v. Continental Ins. Co*, 82 N.Y.2d 281, 294, 624 N.E.2d 647, 604 N.Y.S.2d 510 (1993). The rule was established both to prevent the insurer from passing along a loss to its own insured and to diminish the possibility of a conflict of interest between the insurer and insured that may otherwise affect the insurer's incentive to provide a defense for the insured. *Id.* at 294. "The purpose of the [anti-subrogation] rule . . . is to prevent an insurer who provides coverage to both sides of a third-party action from recouping from one insured—the third-party defendant—the payment it makes on

7

behalf of another insured—the third-party plaintiff." *Fitch v. Turner Constr. Co.*, 241 A.D.2d 166, 171, 671 N.Y.S.2d 446 (N.Y. 1st Dep't 1998).

However, "[t]he anti-subrogation rule applies 'to the extent that any verdict in favor of the plaintiff does not exceed the limits' of the insurance policy." *Del Guidice v. 11 Madison Ave. Owner LLC,* 2018 NY Slip Op 32774(U), 2018 N.Y. Misc. LEXIS 4953 (Sup. Ct. Oct. 29, 2018) quoting *Yong Ju Kim v. Herbert Constr. Co.,* 275 A.D.2d 709, 713 N.Y.S.2d 190 (2d Dept. 2000). New York law does not bar insurance companies from seeking indemnification for settlements or judgments that exceed the limits of an insurance policy. *Mitchell v. NRG Energy Inc..* 142 AD3d 1366, 38 N.Y.S.3d 860 (4th Dept. 2016); *see also Morales v. 10th St., LLC*, 2009 NY Slip Op 51957(U), 899 N.Y.S.2d 61 (Sup. Ct. Sept. 17, 2009) ("the anti-subrogation rule applies only to the policy limits of the comprehensive general liability policy at issue, and claims for contribution and/or indemnification beyond the limits of a common insurance policy are not barred"). Thus, claims for indemnification beyond the policy limits are allowed to proceed. Defendant fails to address the potential for conflict in the event liability in the Underlying Actions exceeds the $1 million policy limit.

In opposition to Merchant's motion for summary judgment NorGUARD has taken the position that it is not required to provide separate counsel to Swan Lake Golf because there is no conflict between NorGUARD – the insurer and Swan Lake Golf – the insured. Def. Mem. at 8. However, NorGUARD has failed to address the conflict between its two insureds Swan Lake Golf and Swan Lake Caterers. This potential for conflict will permeate the entire defense of the underlying claims – each of its insureds will seek to impose liability upon the other. Merchants argues that there is "a potential conflict between Swan Lake Golf and Swan Lake Caterers in the strategy for the defense of the Underlying Actions. The plaintiffs in the Underlying Actions

8

allege that Mr. Murphy was provided alcohol at the golf course by either Swan Lake Golf or Swan Lake Caterers. NorGUARD 56.1 at ¶ 7; Barnas Dec. Ex. C. Swan Lake Golf has a strong argument in the Underlying Action that it has no liability because Swan Lake Caterers had sole responsibility for the sale of alcoholic beverages at the golf course pursuant to the Lease. See Bass Dec. Ex. 1. Counsel representing Swan Lake Golf will thus have to argue that Swan Lake Caterers was solely responsible for alcohol sales, potentially subjecting Caterers to liability." Pl. Reply Mem. at 5. NorGUARD has argued that because it has agreed to indemnify Swan Lake Golf this potential conflict has been resolved. However, it has only agreed to indemnify up to the policy limits, leveling both parties exposed beyond the $1 million cap.

It is well settled that an attorney cannot represent multiple clients where the client's interests are adverse. *Hill v. Berkshire Farm Center and Services for Youth*, 137 Misc 2d 429, 521 N.Y.S.2d 358 (Supreme Court Onondaga County 1987) (court found that the attorney representing multiple defendants needed to be disqualified when there was a cross-claim asserted against one defendant by the other); *Rappaport v. Blank*, 74 AD2d 745, 746, 425 N.Y.S.2d 576 (1st Dep't 1980) ("The general rule is that a lawyer may not represent adverse interests or undertake to discharge conflicting duties."); *see also Kelly v. Greason*, 23 NY2d 368, 244 N.E.2d 456, 296 N.Y.S.2d 937 (1968) (a lawyer may not represent conflicting or adverse interests because such representation threatens the confidential relationship between a lawyer and his client.). Indeed, "[i]t would be inappropriate, and a conflict of interest, for any attorney to simultaneously represent defendants who have asserted cross-claims against each other." *Murphy v. Nutmeg Ins. Co.*, 2003 NYLJ LEXIS 2706 (Sup. Ct. Dutchess Co. Apr. 29, 2003)(citing *Greene v. Greene*, 47 N.Y.2d 447, 451-52, 391 N.E.2d 1355, 418 N.Y.S.2d 379 (1979); *Hill,* 137 Misc.2d at 431-32). Thus, representation of both Swan Lake Golf and Swan

9

Lake Caterers by the same counsel is plainly a conflict of interest. Defendant has caverlerly claimed that the cross claims between the parties should be dismissed now that it has agreed to provide coverage to both parties.  However, given that there are the three actions comprising the Underlying Actions, and in light of the seriousness of the injuries claimed in each, it is plausible that any potentional recovery in the Underlying Actions will exceed the limits of the NorGUARD policy.  Once the policy limit is exceeded the cross-claims and any apportionment of liability between the two insureds will be called into play.  Even the suggestion that the discontinuance of the cross-claims would be the prudent course of action, demonstrates the inherent conflict in Defendant's position. Accordingly, the Court concludes that there is a conflict requiring separate counsel for each of the insureds.

The cases cited by Plaintiff, particularly *East 51st Street Crane Collapse Litigation*, 960 N.Y.S.2d 364, 103 A.D.3d 401 (1st Dep't 2013) and *Ottavioano v. Genex Coop.*, 775 N.Y.S.2d 802, 3 Misc. 3d 1024, 1028 (Sup. Ct. 2004), support this conclusion.[2]  Defendant's attempt to distinuigush these cases fall far short.  The Court in *Ottavioano v. Genex Coop.*, 775 N.Y.S.2d 802, noted that in addition to conflicts between and insurer and insured which require separate counsel "there may be a conflict where more than one defendant is represented by the insurer" which would also require separate counsel.  *Id*. at 805.  Such is the case here.  According to the *Ottavioano* Court the conflicts presented there, which included the assertion of cross claims "all raise profound questions about how counsel for [the insurer] can possibly be loyal to both [insureds]. Under New York law, there can be but one resolution: that after all these years, the insured is entitled to keep its own counsel." *Id*. Similarly, here, the conflict between the two

---

[2] While there were some limitations of coverage at issue in *Murphy v. Nutmeg Ins. Co.*, 773 N.Y.S.2d 413, 5 A.D.3d 358 (2d Dep't 2004), the Court's holding that each of the co-insureds were entitled to separate counsel because of the claims for contribution, is also instructive.

10

insureds precludes representation by the same attorney.

Finally, the Court notes that "the Second Circuit has long recognized that the relationship between a client and the attorney of his or her choice is one that should not be readily disrupted." *Cunniff v. Westfield, Inc.*, 829 F. Supp. 55, 57 (E.D.N.Y. 1993) (quoting *Emons*, 749 F. Supp. at 1292 (citations omitted)). In that sense, in addition to the other reasons discussed above, it would be inappropriate to force Swan Lake Golf to dismiss its chosen counsel in favor of counsel chosen by Defendant. *See id*. (noting that "a client who is forced to relinquish counsel of his or her choice 'incurs a loss of time and money in being compelled to retain new counsel . . . .'") (citation omitted). The Underlying Actions were all filed between March and October of 2019, but it was not until December 2021 that NorGUARD agreed to provide defense costs to Swan Lake Golf and sought to force Swan Lake Golf to switch counsel. Requiring Swan Lake Golf to switch counsel at this late date would undoubtedly prejudice this insured.

Accordingly, Merchant's motion for summary judgment is granted and NorGUARD is required to provide Swan Lake Golf a defense through separate and independent counsel.

**B.     Defendant's Motion for Summary Judgment**

NorGUARD cross moves for summary judgment in this action on its claim that Swan Lake Golf's failure to allow NorGUARD to control its defense of the action and assign counsel of its choosing constitutes a waiver of any further obligation by NorGUARD to defend or indemnify Swan Lake Golf going forward. Def. Mem. at 11-12. Because the Court finds that there is a conflict between the interests of the two insureds which requires separate counsel, there has been no breach of the contract by Swan Lake Golf and therefore Defendant remains obligated to provide defense costs and indemnification under the policy. *Liberty Mut. Fire Ins. Co., v. Hamilton Ins. Co*., 356 F. Supp. 3d 326, 339 (S.D.N.Y. 2018). Defendant argues that

11

reliance upon *Liberty Mut. Fire Ins. Co., v. Hamilton Ins. Co* is misplaced because the insurer in that case only agreed to defend under a reservation of rights. The Court disagrees. As recognized by the court in *Liberty Mutual*, "it is conflict, not the mere reservation of rights, that may strip the insurer of its right to choose counsel for the insured." *Id*. at 338.

    NorGUARD also requests that this Court find that NorGUARD has no obligation to pay for independent counsel after December 16, 2021 or for any amount other than the sum already agreed to by the parties. Def. Reply. Mem. at 4. For the reasons set forth above, Defendant's motion to limit its obligation to provide defense costs after December 16, 2021 is denied.

Dated: Central Islip, New York
         September 20, 2023           **SO ORDERED:**

                                                                      _____/s_____
                                                                      ARLENE R. LINDSAY
                                                                       United States Magistrate Judge